Good morning, Your Honors. Matt Campbell on behalf of Ms. Sutton from the Federal Defender's Office. The issue before the Court today is, I believe, actually a relatively narrow one. Whether Ms. Sutton had a right for a jury instruction on the lesser-included offense of simple assault. And we're arguing that specifically she was entitled to that instruction as a lesser to the assault with a dangerous weapon count. The District Court ultimately didn't give the instruction under the idea that no reasonable jury could have found the requisite intent for simple assault, but not assault with a dangerous weapon. We disagree with this argument. We believe that there was sufficient evidence along with reasonable inferences drawn therefrom. So she comes up and shoots him from the back. What's your best evidence that there was an intent to frighten him and that actually there was a reasonable chance he would have been frightened? Your Honor, technically he was actually shot from the front, but that's a distinction without a difference. Essentially our argument was... Well, she sneaked up on him. Let me put it that way. Correct. She had left the house. She walks back in. She's standing approximately the distance that I am from Your Honors. Right. There had been drinking prior to the shooting. All parties had been drinking. The victim in the case, Ray Pion, testified that Ms. Sutton was stumbling as she walked back into the house. She had bumped into the doorframe just as the gun discharged. She was holding the gun down low. She wasn't holding it up as if to sight it. He described her face at the time of the shooting as showing surprise, shock, and horror. The victim himself testified that it was accidental. So our argument at trial was, in essence, that she brought the gun in with the intention of brandishing it, but not with the intention of shooting. I think it's fair to say if you read the victim's testimony, and I guess the government argued this, in certain ways he was attempting, one might say, to assist his old friend through his testimony. I think the government even argued he was partially not to be believed in their summation. But one thing he did testify about is that he had no apprehension whatsoever. The first thing he was aware of was when he was shot and heard the sounds. That's correct, Your Honor. The judge's question was, what's your best evidence? Your Honor, we believe that much in the same way that if a defendant got on the stand and testified, for example, that they didn't have the intent to perform a specific act. I think case law is almost universal on the point that a jury can reasonably infer evidence regarding mental state. And our argument here is, yes, there was some testimony that he didn't have apprehension. However, as Your Honor points out, the government contested that fact. And numerous times, and I cite to the excerpts at pages 572 as well as 602 and 603, the government essentially argued that Ray Pion was minimizing. So the simple fact that he said, I don't feel threatened, I don't believe is dispositive in this case, particularly where the government had argued that he was minimizing. Well, sure. The government argued that he was minimizing because it was clear given their close relationship or it seemed clear to the government and to the trial judge that he was attempting to help her by characterizing the evidence or the shooting as accidental. But to be entitled to have that jury instruction, the defense has to point to an evidentiary basis to support that. And so I think that's all these questions go towards that. What is the evidentiary basis to show that the victim was in reasonable apprehension of fear or fear of immediate bodily harm? Well, Your Honor, again, I think that the jury is allowed to make reasonable inferences from the evidence. But based on which pieces of evidence or what portions of either somebody's testimony or things of that sort? I think that in this case we have testimony that certainly some sort of threatening statement was made prior to Ms. Sutton leaving the house. The statement was, we're going to put a hole in your gut or something to that effect. That cuts both ways at least. Correct. But there was that statement and I think many people would feel threatened simply by the making of a statement. Secondly, she leaves the house. She then comes back. She walks in, is standing in a doorway, and is holding a gun. It's a reasonable inference that a person would feel threatened under those circumstances. Doesn't a trial judge have an obligation to a jury? I mean, part of this is if there's no evidentiary basis for it or if the evidentiary basis for it is very weak, very thin, then you run the risk, do you not, of misleading a jury and sending them into a fit of confusion over something that really is not in the case. Isn't that a fair consideration for the trial judge? Your Honor, certainly if there's no evidence or, as the case law that I've cited said it was a mere scintilla, then I would agree with that statement. However, the case law, as we've cited, talks about the fact that even if the evidence is weak, insufficient, inconsistent, or doubtful credibility, the instruction should nevertheless be given. And I've cited the Washington case, which cites the Doubleday case to that extent. So I'm not arguing that Judge Nielsen had to agree with my theory or had to agree with my version of the facts. What I am arguing is that the resolution of these issues, what reasonable inferences can be drawn from the evidence, should have been a matter for the jury and not for the judge to determine ahead of time. If I was arguing, say, strongly a Rule 29 issue, then I think that issue would be, then I think it would be a different standard. Are we applying an abusive discretion standard here? Your Honor, there was some give and take on this issue between the government and myself. Since everybody has essentially conceded that it was a, that legally it was a lesser included offense, I guess that issue is gone. The government is arguing that it's abusive discretion. I think in this case there's some question whether the judge properly understood what decision he was supposed to be making. Because repeatedly, as I've cited in the transcript, as I've cited in the record, he seems to be making what I've said is almost a summary judgment ruling. And I think that that's an incorrect legal analysis. I think the question is simply, does some evidence exist? So if we parse through the exact way he decided the case, I think it was procedurally erroneous. To that extent, I think it would be de novo review whether he understood how to review the evidence. Of course, the other theory would be it's not actually a lesser included offense, but a separate offense. And if the government had charged it, my guess is you'd be telling us we're piling on. I think under the Kiva case that it's clear that it would be considered a lesser included offense. Also, had I, were I making those arguments, I guess that would be more an argument for punishment purposes as opposed to lesser included. I'd like to reserve the remainder of my time if there are no questions. Certainly. Thank you, counsel. May it please the Court, George Jacobs on behalf of the United States Attorney's Office for the Eastern District of Washington. Judge Nielsen correctly concluded that there was no evidentiary foundation for the intent to threaten prong of the simple assault instruction. You had a situation where Mr. and Mrs. Sutton, Ms. Sutton and Mr. Peone were very good friends. He was in his house watching TV, professional bull riding with his friends. He underhand tossed a plastic bottle of whiskey. It accidentally hit her in the head. She took umbrage to that. She got upset. He laughed. She threw the bottle back at him. He thought it was over. He started to laugh again. She didn't like that. She made some threatening statements. I'm going to go and get my gun and shoot you or shoot you in the belly. It got quiet. She left the house. She came back. Boom, boom, boom. Three shots. One hit its mark. She carried through. Her actions carried through on her words. Judge Nielsen correctly concluded and the evidence further at trial established that Mr. Peone was not aware of the threat. Should the judge have considered the possibility that Mr. Peone wasn't entirely credible on that point as you yourself argued relative to other testimony? In other words, the jury is not required to believe Peone when he says he wasn't frightened in any way. He didn't know anything about it. He didn't see her. He didn't see her point the gun or brandish the gun. The jury is certainly within their province to say I don't believe that. Maybe you stop and think about it given the dimensions and the proximity of everything. There's something to be said for that. If that were the case and he thinks in his own misguided way trying to help his client, the jury disregards it. Then you have an evidentiary basis for the charge, don't you? You don't, Your Honor. If memory serves me correctly, Mr. Peone, when she left the house, he testified that she or a witness testified that they thought she went home. She had done this before where she just got up and left the house. This time she didn't. I don't know if the court remembers, but when the United States, when the agents executed a search warrant on the truck after the incident, they not only found a box of .22 caliber ammunition, they also found a knife. She didn't go out there and grab her knife. She went out there and grabbed her gun. She did exactly what she said she was going to do as a result of this being laughed at incident, which she did not like. That could support the inference of assault. A knife might in some respects be considered more dangerous that she had the more intent of physically harming as opposed to brandishing a gun and frightening him. Does the fact that he wasn't frightened really matter? He's intoxicated. The inference could be that she wanted to frighten him and he wasn't frightened. But an assault can take place without the victim being actually frightened, right? Not under simple assault and under that second definition of simple assault. The United States would disagree, Your Honor. So you take a gun into a bank and you branch the gun and it's a toy gun or something like that. That's why I didn't intend anything, but of course you tended to create fear. That's an assault. Yes. Even if the bank teller says, I don't believe you, I don't think you're going to shoot. I looked in his eyes, he wasn't going to shoot. That's still an assault. What's different? I'm sorry, Your Honor. What's different from that? Well, here you've got a loaded, you don't have a toy gun. No, but he has no way. Go ahead. What's different here is before she discharged the three rounds, she said, I'm going to go and get my gun and shoot you. And in the factual hypothetical you gave me with the bank teller, you don't have the assailant in that case making a threat of future conduct. And here Ms. Sutton said, I'm going to go and get my gun and shoot you in the belly or shoot you. Doesn't that cut the other way for you? The reason I'm saying that is that statement is trying to induce fear in a sense. And as opposed to the situation where she just gets the gun, doesn't say anything, and goes and shoots him. Your Honor, Mr. Peone, when he testified, and clearly very close relationship between the two of them, right? But he, and if memory serves me, Frank Ellsworth testified that Ms. Sutton had made some statements like that in the past. Had made some threatening statements, and that's just Leona. But this time she did carry through on her threat, and Mr. Peone did not see her discharge that weapon. He was watching professional bull riding, and he didn't even know he'd been hit. He said he heard three pops. He thought in his shirt or belly, and still didn't really even realize he was shot until Mr. Ellsworth grabbed the gun away from her, and they went around the house, and Mr. Ellsworth tossed the ammunition clip up on the roof and the rifle out into the field. And then when they came back inside, that's when Mr. Peone, the victim, realized he had been shot, because now his shirt was bleeding. But, Your Honor, Judge Nielsen did not weigh the evidence. I know that Mr. Campbell argued that in his brief. What Judge Nielsen did was, based on the evidence that he heard at the trial, he concluded there was no evidentiary foundation for the lesser-included defense instruction that was requested. And, Your Honor, as I point out, this is not a case that Keeble doesn't mandate a lesser-included defense instruction in every case. It says if the facts warrant it. The facts in this case do not warrant it. Moreover, this is not a situation where the defendant, the victim, was killed. In the Keeble case, if the Court recalls, the victim in that case was murdered, not with a weapon, but apparently was beaten and then left outside and died overnight in cold weather. So you don't have the constitutional concerns that were present in the Keeble case here, because the penalties for the crimes charged were very different. Thank you, Your Honor. So, factually, you have a situation where the victim thought that the incident was essentially over. The next thing he knows, he's shot. And didn't he testify that he didn't see the rifle and didn't realize that she had been, to the extent that the defense theory is that she brandished the firearm to intend to frighten him, he didn't see that? Judge Nguyen, that's absolutely correct, and I would direct your attention to Judge Nielsen's April 17, 2012. It was a post, it was his order on the new trial motion. Judge Nielsen, in denying that, mentioned that there was uncontested evidence, the uncontested testimony of Mr. Peone, that he did not apprehend immediate bodily harm. Is this case like the federal officer in Acosta, Sierra, who had a rock thrown at him and he didn't realize the threat until after it was over? I did cite that in my brief, Your Honor. And the United States would submit, yes, it is, because the officer in that case, the rock was thrown. He didn't know it was coming. He didn't realize it happened until, I think, the rock hit a fence or landed on the ground. And so, again, you can't have an intent to frighten if the perceiver of the event isn't actually frightened or is not aware of the threat. And that's what the evidence in this case, based on the trial record, showed. Mr. Peone was not aware of the threat. Is there no limitation to that objective test? Supposing, as we know, Mr. Peone was drinking all day, drinking beer, drinking scotch. Let's imagine he was blind drunk and he just wasn't in a position to experience or appreciate fear. The argument is, I take it, that it's incapable of convicting somebody under those circumstances of simple assault. Is there no limitation on that objective test? And does that make any sense? Judge Deary, well. Sort of like the rock thrown case. I think that's correct, Your Honor. Mr. Peone, he was not in a catatonic state. Granted, I believe there was some evidence that he had been drinking the night before, and maybe stayed up all night and maybe consumed some alcohol throughout the course of the day. But he was watching TV. He was interacting with the others. So he was not in a catatonic state. He was not passed out. He just was looking at a TV set and did not. And based on Ms. Sutton leaving earlier, he thought she got up and went home. I understand. But on the law point, your position is an absolute one. Unless the victim, the punitive victim, experiences that fear, it can't be a simple assault. On that prong of the simple assault statute. I think that's correct, Your Honor. Isn't it your real position that if he saw the gun and didn't experience fear? If he saw the gun, he did not. If he saw the gun and didn't experience fear because he didn't think she'd shoot, that's still an assault? I mean, if she came. Let's assume that she didn't fire. She goes in, says, I'm going to shoot you, and points the gun. At that point, if he sees her, don't you think the elements of assault have been met? At that point, of simple assault have been met? Yes, if. . . I'm leaving aside the bad rape. I'm just giving you a hypothetical. Yes, Your Honor. So really isn't the key element the fact of whether he saw the gun or not? Not necessarily the fear he experienced? Again, I'd have to answer that question in the context of the facts of this case. Right, but let's take the other case. Let's say if the officer sees the rock thrown at him. It's a different case, isn't it? Yes, it is, Your Honor. You've got this relationship between Ms. Sutton and Mr. Pio and the victim. And while I would think anyone, if they saw someone pointing a rifle at them, I think it would be reasonable to assume that would create fear in that individual. But do you think it would be a defense to assault for him to say, oh, I didn't think she would shoot? You know, she points it, she intends to shoot, and he says, ah, actually, I know what she's just kidding. So that's not an assault? Well, Your Honor, then you're getting into a – It's hypothetical. What Mr. Pio would be speculating is to the mental state of the person who had that rifle. And that's really a jury – He wouldn't be speculating after the first shot rang out. That's true, Your Honor. That's true. At least I hope not. That is true, Judge Geary. Well, our questions have taken you over your time. Thank you for your arguments, and we'll hear from you. Thank you, Your Honor. Thank you, Your Honor. I'd like to turn to Judge Thomas' hypo. If simple assault is met by simply seeing the gun, then I think we win this case. So where does it say that he saw the gun before she shot it? If you look at excerpts, page 327, we're discussing the issue about her returning. And I ask a question, and he specifically responds, I didn't see the gun all the way. However, he's clear that he sees her come back in the house. He sees her walk into the door. He says, I didn't see the gun all the way, which means he saw the gun part of the way. If we take that statement, that demonstrates that he saw the gun. Now – Did you establish during that cross-examination at what point he saw the gun all the way? Was it after the first shot? Was it prior to the shot? If we look at that portion of the testimony, I stated, now when you're looking at her in the doorway, and she's as clear to you as I am to you right now, he confirms that, says probably a little closer. He talks about the dynamics of his house. So where are you now? I started on, let's see, 327, excerpt page 327, very at top. I guess it's the third line. And I say, now when you're looking at her in the doorway, he says, and she's as clear to you as I am to you right now, right? He says, yeah, but you're probably a little closer. And I said, I should move closer. And I actually did move closer to him. And he says, about there. So he was judging the distance from the doorway to where he was sitting. And I said, she was holding the gun down low. And he says, I actually didn't see her see it, the gun, all the way. I just heard the pops mostly. Mostly. But you could see her face? Yeah, I could see her face. Was there a gun up close to her face? No, there was nothing pointed at me. No. Right. So it's at least, well, I understand the government can certainly argue from that exchange that, oh, we should minimize the value of his testimony. That creates a debatable point. And the remainder of what the government's essentially arguing is its interpretation of the evidence. I would also just, and I believe that the majority of what Judge Nielsen did during both the trial and during the new trial motion is weigh the evidence. And I think if we look at the government's excerpts, pages 37 and 38, it makes it very clear. He says, you're placing a different interpretation on what the agreed facts are. You're just saying it wasn't done on purpose. So he's correct. I'm placing a different interpretation on the facts, and that's a jury issue. Okay. Thank you, counsel. Thank you both for your arguments. Thank you. Thanks for coming down from Spokane. And the case just heard will be submitted for decision.
judges: Dearie, Thomas, Nguyen